UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

JOANNA PRUITT LESTER                          CIVIL ACTION NO. 15-2439

VERSUS                                        JUDGE S. MAURICE HICKS, JR.

WELLS FARGO BANK NA, ET AL.                   MAGISTRATE JUDGE HORNSBY

**MEMORANDUM RULING**

Before the Court are two Rule 12(b)(6) Motions to Dismiss.  See Record Documents 36 & 42.  The first motion (Record Document 36) was filed by Defendant Jeremy Harris d/b/a Jeremy Harris Appraisals ("Harris") and the second motion was filed by Defendants Wells Fargo Bank, N.A., as servicer for U.S. Bank National Association, as Trustee for Citigroup Mortgage Loan Trust 2007 - WFHE4; Ruth Millican; Daniel Bennigsdorf; Jesse Swift; Sheri Jackson; and John Doe (collectively referred to as the "Wells Fargo Defendants").  Both motions are unopposed.  For the reasons set forth below, Harris' motion is **GRANTED** and the WFB Defendants' motion is **GRANTED** as to all claims except Plaintiff Joanna Pruitt Lester's ("Lester") Telephone Consumer Protection Act claim against Wells Fargo Bank, N.A.

**BACKGROUND**

Lester is the mortgagor of immovable property located at 5927 Buncombe Road in Shreveport, Louisiana ("the Property").  See Record Document 34 at ¶ 8.  Lester originally acquired the Property in April 2007 with financing from Wells Fargo Bank, N.A. ("WFB") in the form of a $264,000 variable rate mortgage loan, as well as a second mortgage loan from another lender for $66,000.  See id. at ¶¶ 8-9.  The rate on the first loan was 8.95%

with a balloon payment.  See id. at ¶ 8.  The rate on the second mortgage was 12.75%.
See id. at ¶ 9.  Lester alleges that WFB, specifically Wells Fargo Home Mortgage
Consultant Ruth Millican ("Millican"), "fraudulently" told her that she could apply to
refinance the first loan "at a much better rate" after six months.  Id. at ¶ 10.  Lester
maintains that when she contacted WFB after six months, she "was told that [she] could
not apply [for refinance] because of the adjustable rate for both the [first] and [second]
mortgages."  Id.

In 2008, Lester lost her part-time job as a federal employee.  See id. at ¶ 11.  Lester
alleges that she immediately contacted WFB by telephone to ask for mortgage assistance.
See id.  She maintains that she was told she "had to be at least 3 months in arrears before
any assistance would be considered."  Id.  Lester alleges that she relied on this statement
and "got 3 months behind on [her] mortgage risking foreclosure."  Id.  In 2010, Lester
applied for and received a loan modification.  See id. at ¶ 12.  According to Lester, she
completed the trial period and agreed to a monthly payment; yet, "after only 3 payments
[she] received notification from WFB stating that the monthly mortgage was increasing to
an amount nearly to where it was originally."  Id.

In 2011, Lester began to attend "HOME SAVE" events in Dallas, Texas.  See id. at
¶ 13.  These events were sponsored by the Neighborhood Assistance Corporation of
America ("NACA").  See id.  Lester alleges that at these events, NACA representatives told
her that she "met the requirements to receive a modification of [her] loan."  Id.  Yet, when
she and NACA met with WFB at these events, WFB informed her that they would not be
able make a decision that day as to her modification.  See id.  Lester later learned that
WFB sold her mortgage and this was part of the reason her request for modification was

denied.  See id. at ¶¶ 14-15.

Lester subsequently "sought the protection of the Court" and filed bankruptcy.  Id. at ¶ 15.  She voluntarily dismissed her bankruptcy after allegedly being "told that as long as [she] was in bankruptcy . . . WFB would not negotiate or even discuss a loan modification."  Id.  Lester alleges that "when [she] voluntarily dismissed [her] [b]ankruptcy case, [she] was told by WFB that no foreclosure proceedings would be pursued by WFB until after [she] and WFB completed their effort to get [her] mortgage modified if possible."  Id. at ¶ 17.

Foreclosure proceedings were instituted against Lester on September 22, 2011, in the First Judicial District for the Parish of Caddo ("foreclosure proceeding").  See id. at ¶ 18.  The foreclosure sale was set on November 13, 2013.  However, after communications with representatives for Lester, the foreclosure sale was cancelled.  See id.  The foreclosure proceeding was dismissed by motion dated June 13, 2014.  WFB eventually offered to modify Lester's loan.  See id. at ¶ 27.

Lester again got behind on the mortgage payment based on a change in [her] income and the fact that [her] youngest son just started college."  Id. at ¶ 28.  Lester contacted WFB, applied for a modification, and was denied.  See id.  Lester gave up hope of retaining her "Dream House" and contacted WFB to explore options for exiting the Property in a way that would be beneficial to all parties involved.  Id. at ¶ 30.  By letter dated July 2015, WFB informed Lester of options that may be available in case of default to avoid foreclosure.  See id. at ¶ 31.  Lester contacted WFB and was directed to Daniel Bennigdorf ("Bennigsdorf").  Lester inquired about a modification and the possibility of a sale before foreclosure.  See id.  Bennigsdorf contacted Jeremy Harris Appraisals and

Page 3 of  20

ordered an appraisal of Lester's property.  See id.

Jeremy Harris ("Harris") conducted an "Exterior Only" appraisal of the Property.  See id. at ¶ 45.  The appraisal was conducted on August 11, 2015 and valued the property at $255,000.  See id. at ¶ 48.  Lester alleges that the house appraised over 20% below the assessed value.  See id. at ¶ 45.  Lester maintains that the appraisal should have valued the Property "between a low of $299,000 and a high of $350,000."  Id. at ¶ 48.  She contends Harris used inferior "comps" and "comps" that should have been adjusted upward.  Id. at ¶ 45.  Lester alleges that Harris grossly undervalued the property and has the reputation for doing so to homes in African-American neighborhoods.  See id. at ¶¶ 45-49.  Lester maintains that Harris and WFB colluded to damage and defraud her.  See id. at ¶¶ 49-50.

Lester alleges that Bennigsdorf sent her Harris' "very low and fraudulent appraisal" that was based on the "default service value" of her property, not the "current market value" of her property.  Id. at ¶ 32.  Lester responded to the "fraudulent appraisal" and received a telephone call from WFB representative Jesse Swift ("Swift").  Id. at ¶ 35.  Lester alleges that Swift made misleading statements, pretending WFB had no intention of foreclosing and sent her letters stating that he was there to help, all while he was attempting to influence the new appraiser retained by WFB to perform another appraisal.  See id. at ¶¶ 35-36.

In September 2015, Lester also received a letter from WFB representative Sheri Jackson ("Jackson") regarding Lester's response to the appraisal.  See id. at ¶ 41.  Jackson indicated that it may be necessary to order a new appraisal, but Lester never received notice that a new appraisal was ordered.  See id.  Jackson sent several

subsequent letters informing Lester that her inquiry was in progress.  See id. at ¶ 43.

Jackson ultimately notified Lester that WFB had determined that she did not meet the

requirements for a modification.  See id.

Lester brought this action on September 28, 2015, against WFB and Harris.  See

Record Document 1.  The Court ordered Lester to file an amended and restated complaint,

which she did on April 7, 2016.  See Record Documents 31, 33 & 34.  Lester named

additional defendants, Millican, Bennigsdorf, Swift, Jackson, and John Doe.  See Record

Document 34.  Lester alleges a myriad of causes of action, including: (1) breach of

contract; (2) fraud; (3) negligent and intentional misrepresentation; (4) negligent and

intentional infliction of emotional distress; (5) collusion generally; (6) unfair and deceptive

trade practices under the Louisiana Unfair Trade Practices Act ("LUTPA"); (7) violations

of the Racketeer Influenced and Corruption Organizations Act ("RICO"); (8) violations of

the Telephone Consumer Protection Act ("TCPA"); (9) violations of the Federal Trade

Commission Act ("FTCA") Section 5; (10) violations of the Truth in Lending Act ("TILA");

(11) violations of the Uniform Standards of Professional Appraisal Practice ("USPAP");

violations of the Louisiana Civil Code Articles 2315-2324; (13) collusion to deprive her of

her constitutional rights based upon racial discrimination; and (14) violations of 18 U.S.C.

§ 1341-1343 (mail fraud and wire fraud).  It is unclear to the Court which causes of action

Lester asserts against the various Defendants.

## LAW AND ANALYSIS

**A.    Rule 12(b)(6) Standard.**

Rule 8(a)(2) of the Federal Rules of Civil Procedure governs the requirements for

pleadings that state a claim for relief, requiring that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  The standard for the adequacy of complaints under Rule 8(a)(2) changed from the old, more plaintiff-friendly "no set of facts" standard to a "plausibility" standard found in Bell Atlantic v. Twombly and its progeny.  Twombly, 550 U.S. 544, 127 S.Ct. 1955 (2007).  Under this standard, "factual allegations must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Twombly, 550 U.S. at 555-556, 127 S.Ct. at 1965.  If a pleading only contains "labels and conclusions" and "formulaic recitation of the elements of a cause of action," the pleading does not meet the standards of Rule 8(a)(2).  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citation omitted).

In deciding a Rule 12(b)(6) motion to dismiss, a court generally "may not go outside the pleadings."  Colle v. Brazos County, Texas, 981 F.2d 237, 243 (5th Cir. 1993).[1]  Courts must also accept all allegations in a complaint as true.  See Iqbal, 556 U.S. at 678, 129

---

[1]Harris has attached the appraisal as an exhibit to his Motion to Dismiss.  See Record Document 36-1 at 19-38.  In ruling on a motion to dismiss, a court may consider "any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference . . . and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit."  RBS Holdings, Inc. v. Wells Fargo Century, Inc., 485 F.Supp. 2d 472, 476 (S.D.N.Y. 2007).  Information is incorporated into the complaint "where the complaint necessarily relies upon a document, or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance."  Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir.2010); see also Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498-99 (5th Cir. 2000).  Here, Lester's Amended and Restated Complaint refers to and incorporates the appraisal.  Her allegations against Harris are based solely upon the appraisal and the purported effects of the appraisal.  Thus, this Court is free to consider the appraisal itself in the context of Harris' Motion to Dismiss.

S.Ct. at 1949.  However, courts do not have to accept legal conclusions as facts.  See id. Courts considering a motion to dismiss under Rule 12(b)(6) are only obligated to allow those complaints that are facially plausible under the Iqbal and Twombly standard to survive such a motion.  See id. at 678-679, 129 S.Ct. at 1949-1950.  If the complaint does not meet this standard, it can be dismissed for failure to state a claim upon which relief can be granted. See id. Such a dismissal ends the case "at the point of minimum expenditure of time and money by the parties and the court."  Twombly, 550 U.S. at 558, 127 S.Ct. at 1966.

**B.    Claims Against Harris.**

Lester's factual allegations against Harris were set forth above.  The allegations as to Harris relate to two areas, conspiracy/collusion and the appraisal.  The Court will first address the allegations and claims relating to conspiracy/collusion.

The actionable element in a claim for civil conspiracy or collusion under Louisiana Civil Code Article 2324 is not the conspiracy itself, but instead the tort which the conspirators agree to perpetrate and which they actually commit in whole or in part.  See Aranyosi v. Delchamps, Inc., 98-1325 (La. App. 1 Cir. 1999), 739 So.2d 911, 917 ("Louisiana Civil Code [A]rticle 2324 does not by itself impose liability for a civil conspiracy.").  To recover under such a theory, a plaintiff must establish the existence of an agreement to commit an illegal or tortious act which resulted in the plaintiff's injury.  See id.  Under federal law, a person injured as the result of a conspiracy to interfere with his civil rights may bring an action under Title 42, United States Code, Section 1985(3).  See Suttles v. U.S. Postal Service, 927 F. Supp. 990, 1000-1001 (S.D. Tex.1996).  To state a civil rights conspiracy claim, a "plaintiff must allege:  (1) a conspiracy involving two or more

Page 7 of  20

persons; (2) for the purpose of depriving, either directly or indirectly, a person or class of persons of equal protection of laws; and (3) an act in furtherance of conspiracy; (4) which causes injury to person or property, or deprivation of any right or privilege of a citizen of the United States." Id. Similar to Louisiana law, a "civil conspiracy is a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." Lenard v. Argento, 699 F.2d 874, 882 (7th Cir.1983).

Here, the entirety of Lester's non-appraisal related allegations pertain to events dating back to 2008 and pre-date the August 11, 2015 appraisal.  Harris is not mentioned in the Amended and Restated Complaint until the appraisal is discussed.  There are no factual allegations that directly involve Harris, or even refer to Harris, other than those relating to the appraisal.  Lester's only avenue to connect Harris with the allegations against the other Defendants is to allege collusion or a civil conspiracy.  Yet, her factual allegations relating to a conspiracy or collusion between Harris and WFB are subjective, unexplained, conclusory, and factually unsupported.   Lester has not alleged any "agreement" between Harris and the other Defendants to commit any tortious act, nor has she alleged any factual basis to demonstrate that such an agreement existed or was ever even contemplated.  In fact, she admits in her Amended and Restated Complaint that WFB confirmed to her by letter that "[A]n appraiser is a third party vendor.  We have no control or input into their appraisal process."  Record Document 34 at ¶ 38.  As noted by Harris in his motion, he is a third party vendor, on an approved list, assigned by an appraisal service.  See Record Document 36-1 at 12.  Lester's factual allegations are insufficient to

Page 8 of  20

show that Harris ever had any contact with or spoke to WFB.  Accordingly, under the pleading mandates set forth in Twombly, Lester has failed to establish the requisite elements to state a cause of action for conspiracy or collusion, whether under Louisiana or federal law, on the part of Harris.  The conspiracy and collusion claims, and any and all causes of actions based upon the such claims, are **DISMISSED** as to Harris. These include claims for violations of RICO, TCPA,[2] TILA, LUTPA, FTCA, Mail Fraud, Wire Fraud, and conspiracy to deprive Lester of her constitutional rights based upon racial discrimination.[3]

Lester makes specific allegations against Harris relating to the August 2015 appraisal.  While Lester's stated claims or causes of action relating to the appraisal are not entirely clear, they appear to encompass: (1) breach of contract; (2) negligent misrepresentation; (3) negligent infliction of emotional distress; (4) fraud (intentional misrepresentation); (5) intentional infliction of emotional distress; and (6) USPAP.  Even assuming all of Lester's well-pleaded factual allegations as true, all of these claims fail.

Breach of Contract

Under Louisiana law, "no action for breach of contract may lie in the absence of privity of contract between the parties." Estate of Mayeaux v. Glover, 2008–2031 (La. App. 1 Cir. 1/12/10), 31 So.3d 1090, 1095.  Here, Lester admitted that WFB was the party who

---

[2]As will be discussed *infra*, the only remaining claim against WFB relates to the alleged violation of the TCPA.  Lester sets forth no factual allegations relating to the TCPA as to Harris.

[3]Lester's allegations relating to racial discrimination were directed against Harris. The WFB Defendants adopted the arguments made by Harris in his Motion to Dismiss as to any racial discrimination claims.  See Record Document 42-1 at 26.

contacted Harris and ordered an appraisal.  See Record Document 34 at ¶31.  The appraisal itself also demonstrates that the lender/client was WFB.  See Record Document 36-1 at 19.  Thus, there was no privity of contract between Lester and Harris, and Lester's breach of contract claim against Harris fails as a matter of law.

Negligent Misrepresentation/Negligent Infliction of Emotional Distress

Courts must employ Louisiana's duty-risk analysis in considering tort claims.  This analysis requires the plaintiff to prove four distinct elements:  (1) duty, (2) breach, (3) cause in fact, and (4) actual damages.  See Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364, 1369-1370 (La.1984); La. C.C. art 2315.  All four elements must be affirmatively answered for a plaintiff to recover.  See Mathieu v. Imperial Toy Corp., 94-0952 (La.11/30/94), 646 So.2d 318, 322.  In order to prevail on a claim for negligent misrepresentation under the duty-risk analysis, there must be (I) a legal duty on the part of a defendant to supply correct information, (ii) a breach of that duty, and (iii) the breach must have caused damage.  See Pittman, III, M.D. v. Beebe, 95-1342 (La. App. 3 Cir. 3/6/96), 670 So. 2d 761, 764.  Claims for negligent infliction of emotional distress are based upon La. C.C. art 2315 and require a duty-risk analysis.  See Vallier v. Louisiana Health Systems, Inc., 98-834 (La. App. 3 Cir. 12/9/98), 722 So.2d 418, 420-421.

Lester's claims of negligent misrepresentation/negligent infliction of emotional distress fail because Harris owed her no duty.  The appraisal clearly stated that the lender/client was WFB, not Lester.  See Record Document 36-1 at 1.  Additionally, the appraisal provides:

> The intended user of this appraisal report is the lender/client.  The intended use is to  evaluate the property that is the subject of this appraisal for a mortgage finance transaction, subject to the stated Scope of Work, purpose

of the appraisal, reporting requirements of this appraisal report form, and Definition of Market Value.  There are no additional intended users unless identified by the appraiser.

Id. at 23.  Lester was not the "lender/client" or the "intended user" as identified and defined in the appraisal.  The appraisal was not intended or expected to be relied upon by Lester, and there was no duty owed by Harris to Lester under Louisiana law.  See Lemaire v. Breaux, 00-1826 (La. App. 5 Cir. 4/11/01), 788 So. 2d 498;  Thomas v. Livingston Parish Sheriff's Office, 2004-1822 (La. App. 1 Cir. 9/23/05), 923 So.2d 662; Bank of Iberia v, Bronco Realty, Inc., 484 So.2d 292 (La. App. 3 Cir. 1986).  Lester's negligent misrepresentation claim and her negligent infliction of emotional distress claim against Harris fail as a matter of law.

Fraud/Intentional Misrepresentation/Intentional Infliction of Emotional Distress

To recover under a cause of action in delictual fraud under the duty-risk analysis, a plaintiff must prove three elements:  (1) a misrepresentation of material fact, (2) made with the intent to deceive, (3) causing justifiable reliance with resultant injury. See Becnel v. Grodner, 2007-1041 (La. App. 4 Cir. 4/2/08), 982 So.2d 891, 894.  These same elements are necessary to support of claim of intentional misrepresentation.  See Benton v. Clay, 48-245 (La. App. 2 Cir.8/7/13), 123 So.3d 212, 220.  A claim for intentional infliction of emotional distress is also based in the duty-risk analysis under Louisiana Civil Code Article 2315.  See White v. Monsanto Co., 585 So.2d 1205, 1209 (La.1991).  Since a cause of action for intentional tort, delictual fraud, and intentional infliction of emotional distress all require the existence of a duty, the threshold question is whether Harris, as WFB's commissioned appraiser, owed a duty to Lester.  As demonstrated above, no such duty existed; thus, Lester's fraud/intentional misrepresentation and intentional infliction of

emotional distress claims fail as a matter of law.

USPAP

Lester alleges that Harris violated the USPAP.  While Harris maintains that he complied at all times with USPAP in preparing the appraisal, the only party that could bring an action against Harris for noncompliance with the USPAP is the lender/client, WFB. Harris owed a duty to WFB, not Lester.  Lester's USPAP claim against Harris fails as a matter of law.

Based on the foregoing analysis, Harris' Rule 12(b)(6) Motion to Dismiss is hereby **GRANTED**, as Lester failed to state a claim upon which relief could be granted.  All claims against Harris are **DISMISSED WITH PREJUDICE**.

**C.     Claims Against the Wells Fargo Defendants.**

Fraud, Negligent and Intentional Misrepresentation, and Negligent and Intentional Infliction of Emotional Distress

The Wells Fargo Defendants include WFB, Millican, Bennigsdorf, Swift, Jackson, and John Doe.  The Court holds that many of Lester's state law claims against these Defendants are precluded by the Louisiana Credit Agreement Statute, La. Rev. Stat. § 6:1122 ("LCAS").

In the Amended and Restated Complaint, Lester contends that WFB wrongfully initiated foreclosure proceedings while discussions regarding a potential loan modification agreement were allegedly taking place.  Specifically, she references verbal assertions made to her relating to her ability to apply for modification.  The Court finds that all state law claims based on such contentions necessarily fail because Lester does not allege that a written loan modification and/or any other written agreement were executed between the

parties in accordance with the strict provisions of the LCAS.

The LCAS applies to loan modifications and other financial accommodations and operates to bar "any claim" based on such agreements if the agreement is not evidenced by a signed, written contract complying with La. Rev. Stat. § 6:1122.  Such claims include claims in tort, claims sounding in contract, claims based on statutes, and claims sounding in equity.  See id.; see also Bass v. Chase Home Fin., LLC, 2010 WL 3922709 at **3-4(E.D. La. Oct. 1, 2010).  Here, Lester alleges wrongdoing on the part of Wells Fargo Defendants unconnected to any identified written agreement.  Therefore, these claims fail under Louisiana law, specifically Section 1122 of the LCAS.[4]  Under the plain language of Section 1122, any agreement by WFB to forbear from exercising the remedy of the foreclosure sale must have been in writing and signed by both parties in order to function as a credit agreement on which Lester could base her claims.  Likewise, any other communications by WFB to Lester upon which she alleges liability must be part of a written agreement.  See generally Whitney Nat'l Bank v. Rockwell, 94-3049 (La. 10/16/95), 661 So. 2d 1325, 1329.  Lester simply cannot base her claims on alleged oral representations. See La. Rev. Stat. § 6:1123[5]; see also Giuffria v. Metro Bank, 98-1951 (La. App. 4 Cir.

_____

[4]Section 6:1122 states:

A debtor shall not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor.

[5]Secton 6:1123 provides:

A.    The following actions shall not give rise to a claim that a new credit agreement is created, unless the agreement satisfies the requirements of R.S. 6:1122:

5/26/99), 735 So. 2d 941; Bass v. Chase Home Fin. LLC, 09-3339, 2010 WL 3922709 (E.D. La. Oct. 1, 2010); Jesco Const. Corp. v. Nationsbank Corp., 2002-0057 (La. 10/25/02), 830 So. 2d 989; King v. Parish Nat'l Bank, 2004-0337 (La. 10/19/04), 885 So. 2d 540, 548.  Because Lester has not alleged any written agreement with WFB, her state law claims fail.  This analysis includes even Lester's fraud and misrepresentation claims, as such claims are precluded by the LCAS.  See Fortenberry v. Hibernia Nat. Bank, 37,266 (La. App. 2 Cir. 8/20/03); 852 So. 2d 1221, 1228 ("Based upon the jurisprudence discussed above, we find that the LCAS precludes causes of action arising from oral credit agreements, regardless of the theory of recovery, including fraud.").

Breach of Contract

Lester alleges that she has suffered injuries as the result of WFB's breach of contract.  Yet, she fails to identify any contract that has been breached.  She has not offered any factual allegations explaining what WFB did in breach of the contract, or how any such alleged breach caused her to sustain damages.  It appears that her claims are grounded on WFB's decisions to decline to enter into new or amended contracts with her,

---

(1)     The rendering of financial or other advice by a creditor to a debtor.

(2)     The consultation by a creditor with a debtor.

(3)     The agreement of a creditor to take or not to take certain actions, such as entering into a new credit agreement, forbearing from exercising remedies under a prior credit agreement, or extending installments due under a prior credit agreement.

B.     A credit agreement shall not be implied from the relationship, fiduciary, or otherwise, of the creditor and the debtor.

not WFB's breach of the terms of any existing contract.  Therefore, Lester's breach of contract claim fails.

RICO

Title 18, United States Code, Section 1964(c) affords a private civil remedy for those injured in their business or property by criminal racketeering offenses as set forth in Section 1962 of the RICO Act.  Lester's RICO claim appears to be based on the alleged collusion of some combination of the Wells Fargo Defendants and Harris to defraud her. To state a civil RICO claim, a plaintiff must adequately allege:  (1) the identification of a person, who, (2) through a pattern of racketeeringactivity, (3) uses or invests income derived therefrom to acquire an interest in or to operate an enterprise engaged in interstate commerce, or acquires, maintains an interest in, or controls such enterprise.  See Crowe v. Henry, 115 F.3d 294, 296 (5th Cir. 1997).

Here, the Court finds that Lester has not alleged a pattern of racketeering activity. "A pattern of racketeering activity requires two or more qualifying 'predicate acts' and a demonstration that the alleged criminal predicate acts are related and amount to or pose a threat of continued criminal activity."  In re MasterCard Int'l Internet Gambling Litig., 313 F.3d 257, 261 (5th Cir. 2002) (internal quotation omitted).  Lester alleges violations of 18 U.S.C. § 1341 (mail fraud) on the part of Swift and Jackson.  She alleges a violation of 18 U.S.C. §1343 (wire fraud) on the part of John Doe, Swift, and Millican.  Yet, she does not allege a pattern or continuity of conduct.  To plead a "pattern" of racketeering activity, a plaintiff not only must allege facts showing multiple acts, but also facts showing that those acts are related and demonstrate "continuity" over time.  The Fifth Circuit explained:

To establish continuity, plaintiffs must prove . . . either a closed period of

repeated conduct, or an open-ended period of conduct that "by its nature projects into the future with a threat of repetition." A closed period of conduct may be demonstrated "by proving a series of related predicates extending over a substantial period of time." An open period of conduct involves the establishment of "a threat of continued racketeering activity." This may be shown where there exists a "specific threat of repetition extending indefinitely into the future," or "where it is shown that the predicates are a regular way of conducting defendant's ongoing legitimate business." The [Supreme] Court has stated that in enacting RICO, Congress was concerned with "long-term criminal conduct."

Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer, 90 F.3d 118, 122 (5th Cir. 1996).

As to closed-ended continuity, federal courts have been strict in requiring the period encompassing the repeated conduct truly be "substantial." Conry v Daugherty, No. 10-4599, 2011 WL 2473959, at *5 (E.D. La. June 22, 2011) (dismissing RICO claims and explaining that closed-ended continuity generally requires a series of related acts extending over a period of more than one year). Here, there is nothing in the Amended and Restated Complaint to suggest such a protracted succession of related predicate acts. With respect to open-ended continuity, the Supreme Court requires proof of "inherently unlawful" conduct, such as murder, obstruction of justice, narcotics trafficking, and embezzlement. See H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. at 229, 242-243, 109 S.Ct. 2893, 2902 (1989). Fraud has been held not to be an "inherently unlawful" activity sufficient to demonstrate open-ended continuity. See U.S. v. Aulicino, 44 F.3d 1102, 1111 (2nd Cir. 1995).

Finally, where RICO allegations concern only a single scheme with a discrete goal, federal courts have refused to find a pattern of racketeering even when the scheme took place over long periods of time. See Conry, 2011 WL 2473959 at *6; see also Jackson v.

BellSouth Telecomms., 372 F.3d 1250, 1267 (11th Cir. 2004).  In Ubuy Holdings, Inc. v. Gladstone, 340 F. Supp. 2d 1343, 1349-50 (S.D. Fla. 2004), the court held that a securities scheme spanning as much as three years and nine months did not demonstrate closed-ended continuity, because the scheme was by its nature isolated and self-contained.

Here, the Court finds that Lester's Amended and Restated Complaint offers no facts to show either closed or open-ended continuity, and therefore fails to plead the "pattern" of racketeering activity necessary to state a RICO claim.  Even accepting the few conclusory allegations Lester does make, any suggested "scheme" was entirely self-contained and isolated.  Lester's RICO claim fails as a matter of law.

Claims Against Millican, John Doe, Bennigsdorf, Swift, and Jackson

Lester alleges violations of RICO, FTCA Section 5, Louisiana Civil Code Articles 2315-2424, and 18 U.S.C. § 1343 (wire fraud) against Millican.  Lester has no private right of action against Millican under the FTCA or the wire fraud statute.  See Norris v. Fairbanks Capital Corp., 178 F. App'x 401, 403 (5th Cir. 2006); Napper v. Anderson, Henley, Shields, Bradford & Pritchard, 500 F.2d 634, 636 (5th Cir. 1974).  As explained above, Lester has failed to sufficiently allege a RICO claim.  Moreover, any negligence claim Lester may have against Millican under the Louisiana Civil Code is prescribed because Millican's actions took place in 2007, during Lester's original loan application process.  See La. C.C. Art. 3492.  All claims against Millican are **DISMISSED WITH PREJUDICE**.

Lester alleges violations of the following against John Doe, the unnamed WFB employee:  18 U.S.C. § 1343 (wire fraud) and FTCA Section 5.  Lester does not have a private right of action under either of these criminal statutes.  All claims against John Doe

Page 17 of  20

are **DISMISSED WITH PREJUDICE**.

Lester alleges violations of the Louisiana Real Estate Appraisers Law ("LREAL"), La. R.S. 37:3395, Dodd Frank Act Section 1472, and FTCA Section 5 against Bennigsdorf. Lester does not have a private right of action under the law as it is enforced by the Louisiana Real Estate Appraisers Board. See La. R.S. 37:3395.  Section 1472 of the Dodd Frank Act does not create a private right of action.  See 15 U.S.C. § 1639e(k).  Lester likewise has no private right of action under the FTCA.  All claims against Bennigsdorf are **DISMISSED WITH PREJUDICE**.

Lester alleges violations of the following against Swift:  FTCA, 18 U.S.C. § 1341 (mail fraud), 18 U.S.C. § 1343 (wire fraud), and RICO.  As has already been discussed, Lester does not have a private right of action under the FTCA or the wire fraud statute. Likewise, she does not have a private right of action under the mail fraud statute.  See White v. Apollo Grp., 241 F. Supp. 2d 710, 713-14 (W.D. Tex. 2003).  Finally, as explained above, Lester has not sufficiently pled a RICO claim.  All claims against Swift are **DISMISSED WITH PREJUDICE**.

Lester alleges violations of the FTCA, 18 U.S.C. § 1341 (mail fraud), and RICO against Jackson.  For the same reasons explained above in relation to the other individual defendants, all claims against Jackson are **DISMISSED WITH PREJUDICE**.[6]

---

[6]To the extent there are any remaining state law claims arising from transactions or occurrences relating to the Foreclosure Proceeding, such claims fail on grounds of *res judicata*.

D.      **Lester's Remaining Claims.**

TILA

Lester seems to make a claim under TILA.  Her allegations as to "unfair and deceptive practices" in lending are limited to general allegations unconnected to her own experience.  See Record Document 34 at ¶ 21.  Moreover, any attempt by Lester to make a claim for improper disclosures under TILA is prescribed, as such claim is subject to a one-year statute of limitations.  See McCrimmon v. Wells Fargo Bank, N.A., 516 F. App'x 372, 375 (5th Cir. 2013); 15 U.S.C. § 1640(e).  Lester's TILA claims are **DISMISSED WITH PREJUDICE**.

18 U.S.C. § 1001

Lester alleges non-specific violations of 18 U.S.C. § 1001.  She has no private right of action to bring such a claim. See Vertkin v. Vertkin, No. 07-4471 SC, 2007 WL 4287512, at *2 (N.D. Cal. Dec. 6, 2007).  Lester's claims under Section 1001 are **DISMISSED WITH PREJUDICE**.

Attorney's Fees

Under Louisiana law, attorney fees are only recoverable based on a contract or statutory provision allowing recovery of such fees.  See Huddleston v. Bossier Bank & Trust Co., 475 So.2d 1082, 1085 (La.1985).  None of Lester's state law claims would entitle her to attorney's fees, nor has she alleged a specific contract provision entitling her to such an award.  RICO contains an attorney's fee provision. See 18 U.S.C. § 1964(c).  However, Lester has not stated a cognizable claim under RICO.

Additionally, Lester is *pro se* in this matter. Courts have determined that *pro se*

litigants are not entitled to attorney's fees under various statutes.  See Gallagher v. McGinnis, No. 00-1468, 2001 WL 515239, at *1 (E.D. La. May 14, 2001); Johnson v. Georgia Highway Exp., Inc., 488 F.2d 714, 719 (5th Cir. 1974), abrogated on other grounds by Blanchard v. Bergeron, 489 U.S. 87, 109 S. Ct. 939, 103 L. Ed. 2d 67 (1989); Cofield v. City of Atlanta, 648 F.2d 986, 987 (5th Cir. 1981).  Lester's request for attorney's fees is **DENIED**.

## CONCLUSION

Based on the analysis above, Harris' Rule 12(b)(6) Motion to Dismiss is **GRANTED** in its entirety and all claims against Harris are **DISMISSED WITH PREJUDICE**.  The WFB Defendants' Rule 12(b)(6) Motion to Dismiss is **GRANTED** as to all claims except Lester's TCPA claim against WFB.  All of other claims against WFB and the individual defendants are **DISMISSED WITH PREJUDICE**.

An order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 27th day of March, 2017.

S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE