**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

JOANNA PRUITT LESTER     CIVIL ACTION NO. 15-2439

VERSUS          JUDGE S. MAURICE HICKS, JR.

WELLS FARGO BANK NA, ET AL.    MAGISTRATE JUDGE HORNSBY

## MEMORANDUM RULING

Before the Court is Defendant Wells Fargo Bank N.A.'s ("WFB") "Motion for Summary Judgment" (Record Document 60) seeking to dismiss with prejudice Plaintiff Joanna Pruitt Lester's ("Lester") remaining claims against WFB.[1] For the reasons stated herein, WFB's Motion is hereby **GRANTED**.

## FACTUAL AND PROCEDURAL BACKGROUND

Lester brought this action on September 28, 2015, against WFB and other defendants who have since been dismissed from this suit. See Record Document 1. The Court ordered Lester to file an amended and restated complaint, which she did on April 7, 2016. See Record Document 34. Lester alleged a myriad of causes of action, including: (1) breach of contract; (2) fraud; (3) negligent and intentional misrepresentation; (4) negligent and intentional infliction of emotional distress; (5) collusion generally; (6) unfair

---

[1] Lester included a Cross-Motion for Summary Judgment in her Memorandum in Opposition filed on February 21, 2018. See Record Document 64 at 8-12. WFB objected to Lester's Cross-Motion as it is untimely. See Record Document 68. The Court issued a scheduling order in this matter which stated dispositive motions were due no later than January 15, 2018. See Record Document 54. Under Fed. R. Civ. P. 16(b), this Court must enter a scheduling order. The purpose of such order is "to assist in the speedy and efficient resolution of cases." Arnold v. Nat'l Cas. Co., 2014 WL 50832, *2 (W.D. La. 2014), quoting Argo v. Woods, 2010 WL 3522047, *2 (5th Cir. 2010). The order "limits the time litigants may file motions." Id. Once in place, "the scheduling order may only be modified by leave of court upon a showing of good cause." Id., citing F .R.C.P. 16(b). The good cause standard calls for "a persuasive reason why the dates originally set by the scheduling order for the filing of dispositive motions could not 'reasonably be met despite the diligence of the party seeking the extension.'" Id., citing F.R.C.P. 16(b) advisory committee's note (1983). Lester's Cross-Motion was filed thirty-seven days after the deadline. Lester neither filed a motion for leave of court nor argued good cause to show why the deadline could not have reasonably been met. Therefore, Lester's "Cross-Motion for Summary Judgment" (Record Document 64) is **DENIED**.

and deceptive trade practices under the Louisiana Unfair Trade Practices Act ("LUTPA"); (7) violations of the Racketeer Influenced and Corruption Organizations Act ("RICO"); (8) violations of the Telephone Consumer Protection Act ("TCPA"); (9) violations of the Federal Trade Commission Act ("FTCA") Section 5; (10) violations of the Truth in Lending Act ("TILA"); (11) violations of the Uniform Standards of Professional Appraisal Practice ("USPAP"); (12) violations of the Louisiana Civil Code Articles 2315-2324; (13) collusion to deprive her of her constitutional rights based upon racial discrimination; and (14) violations of 18 U.S.C. § 1341-1343 (mail fraud and wire fraud). See id. at 2-3. On March 27, 2017, the Court granted defendants' Rule 12(b)(6) Motions to Dismiss, dismissing with prejudice all of the claims Lester raised in her Amended and Restated Complaint except her TCPA claims against WFB.[2] See Record Document 48.

In support of her TCPA claims, Lester alleged that while she was in arrears on her mortgage loan, WFB called her between six and ten times per day, from January 1, 2011 through December 31, 2015,[3] utilizing automated phone messaging. See Record Document 34 at 13. Lester has acknowledged that she provided WFB with her personal cell phone number on her loan documents and also on various other documents that she filled out and submitted to WFB between 2008 and 2015. See Record Document 60-4 at 5-6; 7-20. Lester also has acknowledged that she understood that by including her cell phone number on these documents, she was consenting to being contacted on her cell

---

[2] The Court gave a more detailed account of the underlying facts in this Memorandum Ruling. See Record Document 48 at 1-5. In the instant ruling, the Court will focus on the facts pertinent to Lester's remaining TCPA claims.

[3] Although Lester stated in her Amended Complaint these calls took place for "3 years straight," and listed the dates October 2012 through October 2015 in her initial interrogatory response and throughout her own requests for discovery, Lester has indicated that this was a typo and a miscommunication between herself and her paralegal/typist. The dates should have read January 2011 through December 2011. See Record Document 60-4 at 20; Record Document 64-6 at 1.

phone concerning her loan. See id. at 7-8. Lester never made any written request asking WFB not to contact her on her cell phone, but she has testified that, sometime in 2013, she made verbal statements to WFB customer service representatives requesting that the calls stop or that their frequency be reduced. See id. at 2,4, 22. Lester could not recall exactly when she made her oral requests or what exactly she said to the WFB representatives, stating at one point in her deposition, "I just said, okay, don't call me. I don't want any calls," but later, when asked if she remembered her exact words, Lester indicated she told the representative that "[she] felt like [she] was being harassed by the phone calls and would [they] please stop calling [her] so many times a day." Id. at 4, 22. On three separate occasions during 2013, Lester also provided her cell phone number to WFB and consented to being contacted. See id. at 16-20.

In June of 2016, WFB settled a TCPA class action entitled Markos v. Wells Fargo Bank, N.A., Case No. 1:15-cv-01156-LMM, in the United States District for the Northern District of Georgia. See Record Document 60-3 at 3. Under the settlement agreement approved by the court, the class members released WFB from "any and all claims ... that arise out of the Released Parties' use of an 'automatic telephone dialing system' or 'artificial or prerecorded voice' to contact or attempt to contact Settlement Class Members in connection with a Residential Mortgage Loan and/or Home Equity Loan during the Class Period (November 17, 2011 to February 29, 2016)." Id. at 40. In Markos, the settlement class consisted of "[a]ll users or subscribers to a wireless or cellular service within the United States who used or subscribed to a phone number to which Wells Fargo made or initiated one or more calls during the class period using any automated dialing

technology or artificial or prerecorded voice technology, according to Wells Fargo's available records, and who are within Subclass One and/or Two." Id. at 26.

A notice was sent to all settlement class members. The notice explicitly stated that "if you do nothing, you will remain part of the Settlement Class and will release your claims against the released parties, but you will not receive any money from this settlement." Id. at 2. Lester admitted that she received the postcard containing this information. See Record Document 60-4 at 24-25. On January 30, 2017, the Markos Court certified the settlement class and approved the class action settlement and the notice plan. See Record Document 60-3 at 3. Only the persons listed in "Exhibit A" properly excluded themselves from this settlement and are therefore not settlement class members for the purposes of the court's order. See id. at 5. Lester's name does not appear on that list. See id. at 12-19.

WFB filed the instant Motion for Summary Judgment on January 12, 2018, arguing Lester waived all TCPA claims arising from November 17, 2011 to February 29, 2016 by failing to opt out of the Markos class action settlement. See Record Document 60-1 at 7. Additionally, WFB asserts Lester has no TCPA claims from January 1, 2011 to November 16, 2011 because she expressly consented to WFB contacting her on her cell phone. See id. at 8. Lester filed a late opposition on February 21, 2018,[4] claiming she did opt out of the Markos class action settlement and that she orally revoked her consent starting in

---

[4] After first filing her Motion for Extension of Time after the fourteen day period mandated by the Court's Scheduling Order (Record Document 54), the Court extended Lester's deadline an extra three weeks to February 20, 2018 to allow Lester, who is proceeding *pro se*, additional time to sufficiently respond to WFB's motion. Lester, in turn, filed her Opposition Memorandum a day late on February 21, 2018. See Record Document 64. Nonetheless, the Court will consider Lester's opposition.

2011. <u>See</u> Record Document 64. WFB filed its reply on February 27, 2018. <u>See</u> Record Document 65.

## LAW AND ANALYSIS

### I. Summary Judgment Standard

Rule 56 of the F.R.C.P. governs summary judgment. This rule provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." F.R.C.P. 56(a). Also, "a party asserting that a fact cannot be or is genuinely disputed must support the motion by citing to particular parts of materials in the record, including . . . affidavits . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." F.R.C.P. 56(c)(1)(A) and (B). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment." F.R.C.P. 56(e)(3).

In a summary judgment motion, "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings  . . . [and] affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (internal quotations and citations omitted). If the movant meets this initial burden, then the non-movant has the burden of going beyond the pleadings and designating specific facts that prove that a genuine issue of material fact exists. <u>See</u> <u>Celotex</u>, 477 U.S. at 325, 106 S. Ct. at 2554; <u>see</u> <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994). A non-movant, however, cannot

meet the burden of proving that a genuine issue of material fact exists by providing only "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." <u>Little</u>, 37 F.3d at 1075.

Additionally, in deciding a summary judgment motion, courts "resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is when both parties have submitted evidence of contradictory facts." <u>Id.</u> Courts "do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." <u>Id.</u>

## II.    Analysis

### i.    Lester Did Not Opt Out of the <u>Markos</u> Class Action Settlement

There is no genuine dispute as to the material fact that Lester waived her right to assert any TCPA claim against WFB for communications that WFB made to her between November 17, 2011 and February 29, 2016.[5] Wells Fargo settled these claims through the <u>Markos</u> class action. As stated above, subject to the settlement agreement, all class members released WFB from liability for all TCPA claims arising during the class period (November 17, 2011 through February 29, 2016). <u>See</u> Record Document 60-3 at 40. Lester is a class member of "Subclass One" given that her claims relate to automated calls that WFB made to her in connection with her residential mortgage loan. <u>See id</u>. at 1. Lester received notice of the class settlement action informing her of her status as a class member and her right to opt out. <u>See</u> Record Document 60-4 at 24-25. According to the court records, Lester did not opt out of the settlement class. <u>See</u> Record Document 60-3 at 12-19. Therefore, Lester has waived her claims related to this time period.

---

[5] This time period extends beyond the date in which Lester filed her original Complaint, September 28, 2015. <u>See</u> Record Document 1.

Lester argues that she, in fact, did opt out of the <u>Markos</u> class action settlement, claiming she sent the postcard to the address provided by WFB before the November 2016 deadline. <u>See</u> Record Document 64 at 1-2. She asserts she followed the procedure outlined on the postcard and, thus, did her part in opting out. <u>See</u> Record Document 64 at 2. However, the undisputed fact that Lester's name does not appear on the list excluding class members found in Exhibit A ultimately defeats her argument. <u>See</u> <u>Sanders v. John Nuveen & Co.</u>, 524 F.2d 1064, 1074-75 (7th Cir. 1975) (finding a class member had not opted out where he sent a carbon copy of his letter requesting exclusion to the defendant but there was "no record" that it had ever been "received" by the court as required). Furthermore, "the testimony of a class member, without some documentary proof of mailing, will seldom, if ever, be sufficient to meet the burden of showing a timely request to opt out." <u>In re WorldCom, Inc. Securities Litigation</u>, 2005 WL 1048073, *4 (S.D. N.Y. 2005).

Here, Lester's only evidence supporting her claim is her own deposition testimony and the affidavit of her husband. <u>See</u> Record Document 64-1 at 39 and Record Document 64-7. Therefore, Lester fails to provide sufficient summary judgment evidence to show there is a genuine dispute that Lester did not opt out. By failing to opt out of the <u>Markos</u> class action settlement agreement, Lester has waived her TCPA claims arising during the class period. Accordingly, Lester's TCPA claims from November 17, 2011 through September 28, 2015 (the date the Complaint was filed) must be **DISMISSED WITH PREJUDICE**.

###    ii.    Lester Did Not Revoke her Consent Before November 16, 2011

Since Lester has waived her claims from November 17, 2011 through February 29, 2016, the Court is left with determining whether Lester has any remaining TCPA claims from January 1, 2011 through November 16, 2011. Because Lester expressly consented to WFB's calls and failed to revoke that consent until sometime in 2013, her remaining claims are without merit.[6]

The TCPA provides in relevant part that:

[I]t shall be unlawful for any person within the United States … to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to … a cellular telephone service ….

47 U.S.C. § 227(b)(1)(A)(iii). The Federal Communication Commission ("FCC") has held that, "the provision of a cell phone number to a creditor, e.g., as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt." In re Rules Implementing the Telephone Consumer Protections Act of 1991, 23 F.C.C.R. 559, 564 (2008);[7] see also Saragusa v. Countrywide, 2016 WL 1059004, *4 (E.D. La. 2016) ("a person consents to receiving phone calls if she gives a company her number before the company calls her … h[er] general consent to being called...constitutes prior express consent").

---

[6] Additionally, the Court finds all TCPA claims arising from calls before September 28, 2011 are time-barred. The statute of limitations for a TCPA claim filed in federal court is four years. See Bailey v. Domino's Pizza, LLC, 867 F. Supp. 2d 835, 841 (E.D. La. 2012); 28 U.S.C. § 1658(a). Lester originally filed suit on September 28, 2015, therefore, any claims arising before September 28, 2011 have prescribed.

[7] All FCC declaratory rulings are binding on this Court pursuant to the Hobbs Act. See Adamcik v. Credit Control Servs., Inc., 832 F. Supp. 2d 744, 754 n. 13 (W.D. Tex. 2011) (explaining that district courts have no jurisdiction to review FCC declaratory rulings); see also Hobbs Act, 28 U.S.C. § 2342(1) ("The court of appeals … has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of … all final orders of the Federal Communications Commission made reviewable by section 402(a) of title 47").

Lester has admitted that she provided WFB with her cell phone number prior to receiving any phone calls from WFB. <u>See</u> Record Document 60-4 at 5-6. Lester also admitted that she understood that in doing so, she was giving WFB her consent to contact her using that number regarding her loan. <u>See id</u>. at 7-8. Therefore, given that she provided WFB with her express consent to call her on her cell phone prior to January 1, 2011.

In her opposition, Lester admits that she consented to WFB's contact but argues she revoked that consent verbally to several of WFB's representatives starting back in 2011. <u>See</u> Record Document 64 at 7. Putting aside the issues of whether written revocation[8] is necessary and whether Lester ever clearly expressed her desire for WFB to cease contacting her, this assertion by Lester is in direct contradiction to her deposition testimony in which she specifically stated she asked WFB to stop calling her sometime in <u>2013</u>. <u>See</u> Record Document 60-4 at 2, 4. There is nothing in the record evidencing Lester's revocation in 2011. Because Lester expressly consented to WFB contacting her on her cell phone prior January 1, 2011, and cannot show that she revoked her consent

---

[8] WFB argues Lester's consent cannot be withdrawn unless in writing. <u>See</u> Record Document 60-1 at 11. WFB relies on <u>Starkey v. Firstsource Advantage, LLC</u>, 2010 WL 2541756, *6 (W.D. N.Y. 2010), <u>report and recommendation adopted</u>, 2010 WL 2541731 (W.D. N.Y. 2010) ("To cease debt collection calls, written notice is required."), and the line of cases following <u>Starkey</u> to support its argument that written revocation is required under the TCPA. <u>See</u> <u>Cunningham v. Credit Mgmt., L.P.</u>, 2010 WL 3791104, *5 (N.D. Tex. 2010), <u>report and recommendation adopted</u>, 2010 WL 3791049 (N.D. Tex. 2010) (citing <u>Starkey</u> in dicta but resolving case on determination that plaintiff claiming inconvenience of receiving calls is insufficient to revoke prior express consent as a matter of law); <u>Osorio v. State Farm Bank, F.S.B.</u>, 859 F. Supp. 2d 1326, 1331 (S.D. Fla. 2012) (adopting <u>Starkey</u>). Although this Court has not directly examined this issue, other district courts have reached divergent results. <u>Compare</u> <u>Adamcik</u>, 832 F. Supp. 2d at 753 (holding that oral revocation is sufficient under the TCPA, expressly rejecting <u>Starkey</u>); <u>Cherkaoui v Santander Consumer USA, Inc.</u>, 2013 WL 12328769, *3 (S.D. Tex. 2013) (distinguishing <u>Starkey</u> because the FDCPA was not a part of plaintiff's case). However, the FCC appears to have overruled <u>Starkey</u> in its recent declaratory ruling in which it stated, "consumers have a right to revoke consent, using any reasonable method including orally or in writing." <u>In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991</u>, 30 F.C.C.R. 7961, 7966 (2015). The FCC's interpretation has been challenged in an appeal currently pending before the D.C. Circuit. <u>See</u> <u>ACA Int'l v. FCC</u>, No. 15-1211 (D.C. Cir. Argued Oct. 19, 2016).

prior to November 16, 2011, Lester has no valid claim under the TCPA for that period of time. Therefore, Lester's remaining claims must be **DISMISSED WITH PREJUDICE**.

## CONCLUSION

By failing to opt out of the <u>Markos</u> class action settlement agreement, Lester has waived her TCPA claims arising during the class period from November 17, 2011 through September 28, 2015. Additionally, there is no sufficient summary judgment evidence to show that Lester adequately revoked her consent to have WFC contact her before November 16, 2011. Therefore, WFB's "Motion for Summary Judgment" (Record Document 60) seeking to dismiss Lester's remaining TCPA claims is **GRANTED** and Lester's claims are **DISMISSED WITH PREJUDICE**.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 8th day of March, 2018.

S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT